UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PEST COMMITTEE, a Nevada ballot advocacy group; TONY BADILLO, an individual; JACK LIPSMAN, an individual; AL MAURICE, an individual; KENNY BLACKMAN, an individual; WE THE PEOPLE, a Nevada ballot advocacy group; and CITIZENS IN CHARGE, a Virginia foundation,<br><br>                Plaintiffs,<br><br>vs.<br><br>ROSS MILLER, in his official capacity as Secretary of State for the State of Nevada,<br><br>                Defendant. | Case No.: 2:08-cv-01248-RLH-GWF<br><br>**O R D E R**<br><br>(Motion for Partial Summary Judgment–#26;<br>Motion to Intervene–#89;<br>Countermotion for Partial Summary Judgment–#92;<br>Countermotion for Partial Summary Judgment–#101) |

        Before the Court is the Las Vegas Chamber of Commerce, the Reno-Sparks Chamber of Commerce, the Nevada Mining Association, Inc., and the Nevada Taxpayers' Association, Inc.'s (collectively the "Proposed Intervenors") **Motion to Intervene** (#89), filed February 20, 2009. The Court has also considered Plaintiffs PEST Committee, Tony Badillo, Jack Lipsman, Al Maurice, Kenny Blackman, We the People, and Citizens in Charge's Opposition (#97), filed March 10, 2009, and the Proposed Intervenors' Reply (#98), filed March 23, 2009.

1

Also before the Court is Plaintiffs' **Motion for Partial Summary Judgment as to Count 1 of the First Amended Complaint** (#26) and accompanying documents (##27–86), filed January 16 and 20, 2009. The Court has also considered the Proposed Intervenors' Opposition and **Counter-Motion for Summary Judgment on Plaintiffs' First Cause of Action** (##91, 92), filed February 20, 2009; Defendant Ross Miller's Opposition and **Cross Motion for Summary Judgment** (#101), filed April 27, 2009; Plaintiffs' Reply (#104), filed May 20, 2009; and Defendant's Reply (#105), filed June 3, 2009.

## BACKGROUND

Plaintiffs move the Court to declare unconstitutional and to enjoin the enforcement of certain provisions of the Nevada Revised Statutes that govern the initiative and referendum process. Plaintiffs argue the single-subject and description-of-effect requirements found in NRS 295.009 and the pre-election challenge procedure found in NRS 295.061 violate their First Amendment rights. Defendant and the Proposed Intervenors do not dispute the relevant facts, but they oppose Plaintiffs' Motion, arguing that the statutes are constitutional and that summary judgment should be granted in their favor. The Proposed Intervenors move to intervene in order to defend the constitutionality of the challenged statutes.

**I.     Parties**

Plaintiffs are a group of organizations and individuals who seek to use Nevada's initiative and referendum process to effectuate changes in Nevada law. The PEST Committee is a Nevada ballot advocacy group[1] organized to pass the Prevent Employers from Seizing Tips ballot initiative ("PEST Initiative"). The PEST Initiative seeks to amend NRS 608.160 to prohibit an employer from requiring an employee to share her tips with her supervisors. Tony Badillo is the chairman of the PEST Committee, and Al Maurice and Jack Lipsman are its other organizers.

---

[1] A ballot advocacy group is a person or group of persons advocating passage or defeat of a ballot question who are subject to various reporting requirements under Nevada law. *See* NRS 294A.150, 294A.220; NAC 294A.115.

1  Kenny Blackman is a former dealer at Wynn Resorts who led an effort to overturn Wynn's policy
2  of requiring its dealers to share their tips with supervisors. We the People is a ballot advocacy
3  group that has attempted to place a property tax initiative, similar to California's Proposition 13,
4  on the Nevada ballot. Citizens in Charge is a national foundation based in Virginia that works to
5  protect and expand the initiative and referendum process throughout the United States.

   Defendant Ross Miller is the Secretary of State of Nevada.

   The Proposed Intervenors are Nevada nonprofit corporations, some of whom have challenged the validity of proposed ballot initiatives under NRS 295.009 and 295.061.

## II.  Nevada Initiative and Referendum

The Nevada Constitution reserves to Nevada citizens the powers of initiative and referendum. Nev. Const. art. 19, §§ 1, 2. These powers are robust. By referendum petition, Nevadans may put to a vote any "statute or resolution or any part thereof" passed by the Nevada Legislature. *Id.* § 1, cl. 2. And by initiative petition, Nevadans may propose statutes, amendments to statutes, or constitutional amendments. *Id.* § 2, cl. 1. But these powers are not unlimited. Through an initiative, Nevadans cannot revise their entire Constitution; this may only be done by constitutional convention. *See* Nev. Const. art 16, § 2. Further, if an initiative makes an appropriation or requires the expenditure of money, it is invalid unless it also raises the necessary revenue. Nev. Const. art. 19, § 6.

The Nevada Constitution sets the requirements for who can sign an initiative or referendum petition. Each citizen that signs the petition must be a registered voter. *Id.* § 2, cl. 2. In addition to signing the petition, each citizen must write her address and the county in which she is a registered voter. *Id.* § 3, cl. 1. In order for an initiative or referendum to qualify for the ballot, at

1   least ten percent "of the voters who voted in the entire State at the last preceding general election"
2   must sign a petition.[2] *Id.* § 2, cl 2.

3         The Nevada Constitution also sets forth several requirements for initiative and
4   referendum petitions. Each petition must "include the full text of the measure proposed." *Id.* § 3,
5   cl. 1. Further, if the petition proposes a statute or amendment, it must contain the enacting clause:
6   "The People of the State of Nevada do enact as follows." *Id.* A petition may contain multiple
7   documents, but each document in the petition must include an affidavit, signed by its circulator,
8   attesting that all of the signatures on the petition are genuine and each individual who signed the
9   petition is a registered voter in the county of that individual's residence. *Id.* Moreover, the affiant
10  must be a signatory to the petition and execute his oath before a Nevada notary. *Id.*

11        The Constitution also sets time lines to qualify petitions and gives the Secretary of
12  State a prominent role in the process. Before an initiative or referendum petition can be circulated,
13  a copy of the petition must be filed with the Secretary of State, and after circulation, it must be
14  returned to the Secretary of State for signature verification. *Id.* § 1, cl. 2; § 2, cl.3. The time line
15  differs, however, depending on the type of petition. If an initiative petition proposes a statute or
16  statutory amendment, it must be filed with the Secretary of State "not earlier than January 1 of the
17  year preceding the year in which a regular session of the Legislature is held." *Id.* After circulation,
18  it must be filed with the Secretary of State for signature verification "not less than 30 days prior to
19  any regular session of the Legislature." If an initiative petition proposes a constitutional
20  amendment, it may be filed with the Secretary of State "not earlier than September 1 of the year
21  before the year in which the election is to be held." *Id.* § 2, cl. 4. After circulation, it must be filed

---

[2] The Nevada Constitution also requires the petition be signed by at least ten percent of the voters in at least seventy-five percent of the counties in the State. Nev. Const. art 19, § 2, cl. 2. However, the Ninth Circuit held this provision violated the Equal Protection Clause of the United States Constitution. *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010 (9th Cir. 2006). Subsequently, the Nevada Legislature passed NRS 295.012, which required initiative petitions to be signed by at least ten percent of the voters in every county in Nevada. *See* 2007 Nev. Stat. 2743. This Court ruled the every-county requirement also violated the federal Equal Protection Clause. *Marijuana Policy Project v. Miller*, 578 F. Supp. 2d 1290 (D. Nev. 2008).

4

with the Secretary of State for verification "not less than 90 days before any regular general election." *Id.* A referendum petition must be filed with the Secretary of State "not earlier than August 1 of the year before the year in which the election will be held," *id.* § 1, cl. 1, and it must be returned to the Secretary of State for verification "not less than 120 days before the next general election," *id.* § 1, cl. 2. For all petitions, the Legislature may "require petitions to be filed no more than 65 days earlier than is otherwise required"—*i.e.*, 95 days prior to the regular legislative session, 155 days prior to the general election, and 185 days before the next general election, respectively—to facilitate signature verification using "generally accepted statistical procedures." *Id.* § 3, cl.2.

The Constitution states that its initiative and referendum provisions are self-executing. *Id.* § 5. Nonetheless, it also authorizes the Legislature to "provide by law for procedures to facilitate the operation thereof." *Id.* The procedures passed by the Legislature for the operation of initiative and referendum are generally contained in Chapter 295 of the Nevada Revised Statutes. The Secretary of State also promulgates regulations governing initiative referendum, which are generally contained in Chapter 295 of the Nevada Administrative Code.

In 2005, the Nevada Legislature amended NRS Chapter 295. *See* 2005 Nev. Stat. 2828–47. It created a new section, NRS 295.009, that added two requirements for all petitions. First, each petition must "[e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto." *Id.* at 2837. The statute further explains:

> [A] petition for initiative or referendum embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.

*Id.* at 2838. Second, NRS 295.009 requires that each petition must "[s]et forth, in not more than 200 words, a description of the effect of the initiative or referendum if the initiative or referendum is approved by the voters." *Id.* at 2837–38. The Legislature also added subsection 1 to NRS 295.061, which provides, "The description of the effect of an initiative or referendum … may be

5

1  challenged by filing a complaint in the First Judicial District Court not later than 30 days … after a
2  copy of the petition is initially placed on file with the Secretary of State." *Id.* at 2839. This new
3  subsection set firm deadlines for when pre-election challenges could be brought based on the
4  description-of-effect requirement.
5         In 2007, the Legislature again modified NRS Chapter 295. The Legislature added
6  subsection 2 to NRS 295.015. This new provision states that if a petition or the description of
7  effect of a petition is amended after the petition is initially filed with the Secretary of State, the
8  revised petition must be filed with the Secretary of State before it can be circulated. 2007 Nev.
9  Stat. 1251. It further provides that any signatures collected on the original petition are invalid. *Id.*
10 The Legislature also amended NRS 295.056(3). The statute previously required that all initiative
11 petitions for constitutional amendments be submitted for signature verification to the Secretary of
12 State by the third Tuesday in June of an even-numbered year. The Legislature amended the statute
13 to move the date forward to the third Tuesday in May.[3] 2007 Nev. Stat. 326. Lastly, the Legislature
14 twice amended NRS 295.061. It first reduced the time for filing a complaint in the First Judicial
15 District Court from thirty to fifteen days. 2007 Nev. Stat. 326–27. Later in the legislative session,
16 the Legislature amended NRS 295.061 a second time so that it also regulates pre-election
17 challenges to the single-subject requirement in addition to the description-of-effect requirement.
18 *Id.* at 1251. The Legislature also added a safe haven to the statute: if a petition's description of
19 effect is modified in compliance with a court order, it cannot be challenged again. *Id.* at 1252.
20 //

---

[3] The Legislature moved this date forward in apparent contravention of the Nevada Constitution, which on its face only permits the Legislature to set the date no earlier than 155 days before the general election. *See* Nev. Const. art. 19, § 2, cl.4; § 3, cl. 2. The general election in 2008 occurred on November 4. June 2, 2008 is 155 days before November 4, 2008. The third Tuesday in May 2008 was the 20th. This provision was later challenged in court for violating the Nevada Constitution. The Nevada Supreme Court held the amendment was unconstitutional and revived the previous June deadline. *See We the People ex rel. Angle v. Miller*, 192 P.3d 1166 (Nev. 2008).

6

### III.      Plaintiffs' Ballot Measures

####         A.      We the People's Property Tax Initiatives

On September 4, 2007, We the People filed the Nevada Property Tax Restraint Initiative. Shortly thereafter, the Nevada State AFL-CIO and the Nevada State Education Association ("NSEA") sued the initiative's sponsors and the Secretary of State pursuant to NRS 295.061, alleging the petition contained a misleading description of effect in violation of NRS 295.009(1)(b). Rather than defend against the lawsuit, on October 3, 2007, We the People withdrew the petition.

On December 18, 2007, We the People resubmitted their petition under the title, Property Tax Reform Initiative for Nevada. We the People redrafted the description of effect to address the claims made by the Nevada AFL-CIO and the NSEA in their prior court filing. Nonetheless, the AFL-CIO and the NSEA challenged the redrafted petition in court, again alleging it contained a misleading description of effect. On February 22, 2008, the two sides reached an agreement on the description of effect language. Consequently, We the People again withdrew their petition and refiled it with the description of effect as agreed upon.

Following litigation, We the People had less than three months to circulate the petition and gather the required number of signatures before the verification deadline in May. After We the People failed to submit their petition in proper format by the deadline, they sued the Secretary of State, arguing the May deadline violated the Nevada Constitution. The Nevada Supreme Court agreed, invalidated NRS 295.056(3) as amended in 2007, and ordered the Secretary of State to accept the signatures submitted by the June deadline set in the prior version of the statute. *See We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166 (Nev. 2008). Notwithstanding this decision, opponents again challenged the initiative in court for problems with the affidavits accompanying the signatures. The district court held that the problems with the affidavits invalidated the petition and enjoined the Secretary of State from including the initiative on the ballot. The Nevada Supreme Court affirmed. *See We the People Nev. v. Nev. State Educ.*

1 *Ass'n*, No. 52390 (Nev. S. Ct. filed Oct. 21, 2008). Consequently, the Property Tax Reform Initiative for Nevada did not appear on the ballot.

### B. The PEST Committee's Initiative

On January 16, 2008, the PEST Committee filed the "Prevent Employers from Seizing Tips" initiative. Opponents sued in state court, alleging the PEST Initiative violated the single-subject and description-of-effect requirements, improperly proposed administrative details, and violated the Nevada Constitution. It also alleged that if the proposed initiative was enacted, it would violate the Equal Protection Clause of the United States Constitution. On March 10, 2008, the PEST Committee removed the action to federal court pursuant to 28 U.S.C. § 1441 based on the opponents' federal equal protection claim. After extensive briefing, on July 15, 2008, the United States District Court remanded the case. The Court held that because the opponents' federal claim was premised on a wholly uncertain condition—namely, that the PEST Initiative would be passed by the voting public—the issue was not ripe for judicial review. Consequently, the Court concluded that it no longer had a basis for federal jurisdiction and remanded the case back to the state court. *See Nev. Rest. Ass'n v. Miller*, No. 3:08-cv-00118-BES-VPC (D. Nev. filed July 15, 2008). On July 28, 2008, the opponents filed a motion to recover the attorney fees they incurred as a result of the removal. The two sides then reached a deal: the proponents agreed to withdraw the initiative in exchange for the opponents withdrawing their motion for attorney fees. On August 6, 2008, the PEST Committee officially withdrew the PEST Initiative.

In September 2008, the PEST Committee refiled the PEST Initiative in connection with the filing of this lawsuit.

### VI. Federal Court Proceedings

Plaintiffs filed this case on September 18, 2008, soon after the PEST Committee refiled the PEST Initiative with the Secretary of State and while legal challenges to We the People's Property Tax Reform Initiative for Nevada were still ongoing. On September 29, 2008, Plaintiffs filed their First Amended Complaint, a motion for preliminary injunction, and a motion

for leave to file excess pages. The next day, the Court denied the motion for leave to file excess pages and struck the motion for preliminary injunction. (*See* Dkt. #16, Order.) Defendant Miller filed his Answer to the First Amended Complaint on December 9, 2008. On January 16, 2009, Plaintiffs filed the instant Motion for Partial Summary Judgment. On February 20, 2009, the Proposed Intervenors simultaneously filed their Motion to Intervene, proposed Answer to the First Amended Complaint, proposed Opposition to Plaintiffs' Motion for Partial Summary Judgment, and proposed Countermotion for Summary Judgment. Plaintiffs filed their Opposition to the Motion to Intervene on March 10, 2009, and the Proposed Intervenors filed their Reply on March 23, 2009. On April 27, 2009, after multiple stipulations to continue, Defendant filed his Opposition and Countermotion to Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs filed their Reply on May 20, 2009. Defendant Miller filed his Reply to his Countermotion on June 3, 2009. For the reasons discussed below, the Court denies the Motion to Intervene, denies Plaintiffs' Motion for Partial Summary Judgment, grants Defendant's Countermotion for Summary Judgment, and denies as moot the Proposed Intervenors' Countermotion for Summary Judgment.

**DISCUSSION**

**I.     Motion to Intervene**

Intervenors move to intervene as a matter of right under Rule 24(a)(2), or alternatively, by permission of the Court pursuant to Rule 24(b)(1)(B).

**A.     Intervention of Right**

Rule 24(a)(2) permits anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." When evaluating motions to intervene as a matter of right, courts construe Rule 24 liberally in favor of potential intervenors, focusing on practical considerations rather than technical distinctions. *Sw. Ctr. for Biological Diversity v. Berg*,

268 F.3d 810, 817 (9th Cir. 2001). A party seeking to intervene by right must meet four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). An applicant for intervention bears the burden of showing that all four requirements are met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

### 1. Timeliness of Motion

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). Courts consider three factors to determine whether a motion to intervene is timely: (1) the stage of the proceedings when the motion is filed, (2) the prejudice to other parties, and (3) the length and reason for any delay. *Id.*

Here, the Proposed Intervenors filed their Motion to Intervene just over two months after Defendant filed his Answer to Plaintiffs' Amended Complaint. The Proposed Intervenors also filed concurrently with their Motion their proposed Opposition to Plaintiffs' Motion for Partial Summary Judgment and their proposed Countermotion for Summary Judgment. Accordingly, the Court concludes the Motion to Intervene is timely because it was filed during an early stage of the proceedings and because the Proposed Intervenors concurrently filed their Opposition and Countermotion to avoid any delay or prejudice to the other parties.

### 2–3. Significant Protectable Interest and Impairment of that Interest

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). "The

interest test is not a bright-line rule." *Alisal*, 370 F.3d at 919. "[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Lockyer*, 450 F.3d at 441. "An applicant generally satisfies the 'relationship' requirement only if the resolution of plaintiff's claims actually will affect the applicant." *Arakaki*, 324 F.3d at 1084.

The Court concludes the Proposed Intervenors satisfy these two requirements. First, they have a significant protectable interest in this action: pursuant to the requirements of NRS 295.061, they currently have the right to challenge initiative petitions in court for violations of NRS 295.009's single-subject and description-of-effect requirements. Second, if Plaintiffs succeed and have these statutes declared unconstitutional, the Proposed Intervenors will lose the rights afforded them by the statutes. Accordingly, the Court finds the Proposed Intervenors have an interest protected by Nevada law that will be impaired if Plaintiffs succeed on their claims.

### 4. Adequate Representation of Applicant's Interest

Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086. In addition, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* Further, when the government acts on behalf of its citizens, a court should presume the government adequately represents its citizens' interests. *Id.*

In this case, Intervenors have failed to demonstrate that their interests are inadequately represented by the present parties. As an initial matter, the Court concludes the Secretary of State is entitled to a presumption that he adequately represents the Intervenors' interests for two reasons. First, the Secretary of State and the Proposed Intervenors share the same

1   ultimate objective: to uphold NRS 295.009 and 295.061 against constitutional attack. Second, the

2   Secretary, as the Defendant in this case, is acting as a representative of the citizens of Nevada. As

3   such, the Proposed Intervenors must make a compelling showing that the Secretary inadequately

4   represents their interests. *See id.*

5   　　　　　The Proposed Intervenors advance two arguments. First, they claim the Secretary of

6   State, and its counsel the Attorney General, are required to consider the interests of all Nevada

7   citizens, not just the specific interests of the Proposed Intervenors. Second, the Proposed

8   Intervenors argue that they, unlike the Secretary, have actually challenged initiative petitions

9   pursuant to NRS 295.061 for violations of NRS 295.009's single-subject and description-of-effect

10  requirements.

11  　　　　　Both arguments lack merit. As to their first argument, the Proposed Intervenors are

12  correct that the Secretary represents the interests of all Nevada citizens not just the Proposed

13  Intervenors' specific interests. But there is no indication that those interests are different in this

14  case. In reaching this conclusion, the Court has the benefit of hindsight because the Secretary and

15  the Proposed Intervenors have already filed their Oppositions to Plaintiffs' Motion for Summary

16  Judgment. While the Secretary's and the Proposed Intervenor's Oppositions are not identical, they

17  present the same essential arguments. Both assert *Burdick v. Takushi*'s balancing test should apply.

18  Both argue the statutes further Nevada's important interests in avoiding voter confusion,

19  promoting informed decision making, and preventing logrolling.[4] And both argue the statutes

20  should be upheld in their entirety. There is simply no indication from the record currently before

21  the Court that the Secretary's and the the Proposed Intervenors' interests are different.

---

[4] In the initiative context, logrolling refers to the practice of gaining passage of a measure by attaching it to a more popular proposal. *See* Webster's Third International Dictionary of the English Language Unabridged 1331 (2002) ("[T]he exchanging of assistance or favors (as political assistance or favors); *specif* **:** the trading of votes by legislators to secure favorable action on projects of interest to each one."); 8 Oxford English Dictionary 1114 (2d ed. 1989) ("Combination for mutual assistance in political or other action.").

12

As to the Proposed Intervenor's second argument that they and not the Secretary have actually challenged initiative petitions under NRS 295.009 and 295.061, the Court is unpersuaded. The Proposed Intervenors correctly note that the Secretary does not normally file legal challenges to initiative petitions pursuant to NRS 295.009 and 295.061. But it is unclear to the Court why this is relevant. The Secretary has been named as a party and involved in the litigation of nearly every petition challenged under the statutes. *See, e.g.*, *Nevadans for the Prot. of Prop. Rights v. Heller*, 141 P.3d at 1235; *Nevadans for Nevada v. Beers*, 142 P.3d at 352; *Nev. State AFL-CIO v. Angle*, No. 07-01193A (Nev. D. Ct.); *Nev. State AFL-CIO v. Angle*, No. 08 0C 00018 1B (Nev. D. Ct.); *Nev. Resort Ass'n v. Nev. State Educ. Ass'n*, No. 07 0C 01540 1B (Nev. D. Ct.); *Nev. Resort Ass'n v. Waters*, No. 08 0C 00005 1B (Nev. D. Ct.); *Nev. Resort Ass'n v. Nev. State Educ. Ass'n*, No. 08 0C 00066 1B (Nev. D. Ct.); *Nev. Rest. Ass'n v. PEST Comm.*, No. 08 0C 00045 1B (Nev. D. Ct.); *Las Vegas Convention & Visitors Auth v. School Funding Solutions Ballot Advocacy Group*, No. 08 0C 00096 1B (Nev. D. Ct.) (all naming the Secretary of State as a defendant). As such, the Secretary is quite familiar with legal challenges involving initiative petitions. The Court concludes that the Secretary is sufficiently familiar with legal challenges to initiative petitions so as to adequately represent the Proposed Intervenor's interests.

Accordingly, because the Proposed Intervenors have failed to overcome the presumption that the Secretary adequately represents their interests, they are not entitled to intervene as a matter of right. *See Prete v. Bradbury*, 438 F.3d 949, 959 (9th Cir. 2006).

**B.    Permissive intervention**

Rule 24(b)(1)(B) permits a court to allow anyone to intervene who submits a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). But, a district court has discretion to

deny permissive intervention even if the applicant satisfies the threshold requirements. *Id.* In exercising its discretion, a court should consider whether intervention will unduly delay or prejudice the original parties, whether the applicant's interests are adequately represented by the existing parties, and whether judicial economy favors intervention. *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989).

The Proposed Intervenors seek to intervene to defend the constitutionality of NRS 295.009 and 295.061. Because this is the precise claim at issue in Plaintiffs' Motion for Partial Summary Judgment, the Proposed Intervenors satisfy the first and third threshold requirements. Furthermore, the Court has already found that the Proposed Intervenors' Motion is timely. Therefore, the Proposed Intervenors have satisfied their threshold burden and intervention is within the Court's discretion. Nevertheless, the Court denies the Proposed Intervenor's Motion. As discussed previously, the Court finds that the Proposed Intervenors' interests are adequately represented by the Secretary of State. Further, adding them as parties would unnecessarily encumber the litigation. Accordingly, the Court exercises its discretion and denies permissive intervention. Even though it denies the Proposed Intervenors' Motion, the Court has nonetheless considered their Opposition and Countermotion for Summary Judgment and therefore treats these filings as the equivalent of an amicus brief.

II.     **Motions for Partial Summary Judgment**

The parties move the Court to summarily decide whether NRS 295.009 and 295.061 are constitutional. The parties agree that there are no disputed factual issues and that the Court can decide the constitutionality of the two statutes as a matter of law. Accordingly, the Court proceeds to analyze the constitutionality of NRS 295.009 and 295.061.

A.      **Constitutional Review of Election Regulations**

"[W]hen an election law is challenged, its validity depends on the severity of the burden it imposes on the exercise of constitutional rights and the strength of the state interests it serves." *Nader v. Brewer*, 531 F.3d 1028, 1034 (9th Cir. 2008). If a law severely burdens

constitutional rights, to be constitutional, it must satisfy strict scrutiny: the law must be narrowly tailored to achieve a compelling state interest. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). In the First Amendment context, courts apply strict scrutiny to election regulations that restrict the overall quantum of speech available to the voting process, *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000), or that are content-based limitations on speech, *ACLU of Nev. v. Heller*, 378 F.3d 979, 992 (9th Cir. 2004). If, on the other hand, a law imposes only reasonable, nondiscriminatory restrictions on the election process, it is constitutional if it advances a State's important regulatory interests. *Burdick*, 504 U.S. at 434.

The Court analyzes in turn the burdens that the single-subject requirement, the description-of-effect requirement, and the pre-election challenge procedure place on Plaintiffs' First Amendment rights.

**B.   Single-Subject and Description-of-effect Requirements**

As a threshold matter, the Court concludes NRS 295.009's single-subject and description-of-effect requirements are not subject to strict scrutiny because, on their face, they are content neutral and do not restrict the overall quantum of speech. First, both requirements are content neutral because they apply to all initiative petitions regardless of their subject matter. Second, the requirements do not restrict the overall quantum of speech. To the contrary, the single-subject requirement likely increases the quantity of speech available during the election process. As the Tenth Circuit recognized in *Campbell v. Buckley*, "If anything, requiring proponents to pursue separate initiatives on separate subjects might encourage more speech on each such subject." 203 F.3d at 745. And requiring proponents to include a two-hundred word description of the effect of the initiative if passed, by itself, does not diminish the quantity of speech available during the voting process.

Having decided, therefore, that the single-subject and description-of-effect requirements do not severely burden speech, the Court must uphold the constitutionality of NRS 295.009 if it advances Nevada's important interests. In *Nevadans for Property Rights v. Heller*, the

1  Nevada Supreme Court identified two important interests that NRS 295.009's single-subject
2  requirement advances. 141 P.3d 1235, 1242 (Nev. 2006). First, the requirement prevents voter
3  confusion and promotes informed decision making "by narrowing the initiative to a single matter
4  and providing information on that single matter to the voter." *Id.* (quoting *Campbell*, 203 F.3d at
5  746). Second, "the single-subject rule prevents petitioners from gaining passage of provisions that
6  would not otherwise become law by attaching them to more popular proposals or concealing them
7  in a long and complex initiative." *Id.* The Court concludes these important interests—preventing
8  voter confusion, promoting informed decision making, and avoiding logrolling—are sufficient to
9  justify the single-subject requirement.

10  Further, the Court also concludes that Nevada's important interests justify the
11  description-of-effect requirement. In *Nevadans for Nevada v. Beers*, the Nevada Supreme Court
12  recognized that NRS 295.009's description-of-effect requirement, like its single-subject
13  requirement, serves to prevent voter confusion and promote informed decision making. 142 P.3d
14  339, 345 (Nev. 2006). These interests are important to the integrity of Nevada's election process,
15  and the description-of-effect requirement is a reasonable, nondiscriminatory way of furthering
16  those interests. Accordingly, the Court concludes Nevada's single-subject and description-of-effect
17  requirements are facially constitutional.

18  Plaintiffs also make an as-applied challenge, arguing that as interpreted by the
19  Nevada Supreme Court, the single-subject requirement is unconstitutionally vague. A statute is
20  unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning."
21  *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The Court rejects this argument for two
22  reasons. First, single-subject requirements have been upheld by several other jurisidictions. *See*
23  *Campbell*, 203 F.3d at 738; *Biddulph v. Mortham*, 89 F.3d 1491(11th Cir. 1996); *Wasson v.*
24  *Oregon*, 2005 WL 711683 (D. Or. 2005). And Plaintiffs fail to explain how the Nevada Supreme
25  Court's application of the single-subject requirement is materially different from how it is applied
26  in other jurisdictions. Second, although courts are generally concerned that vague laws will chill

constitutionally protected speech, *see NAACP v. Button*, 371 U.S. 415, 433 (1963), a single-subject requirement, even if strictly enforced, is unlikely to chill speech. Rather, it forces proponents to bring multiple initiatives in order to legislate on multiple issues. And as the Tenth Circuit indicated, this has the tendency to promote more, not less, speech. *See Campbell*, 203 F.3d at 745. Accordingly, the Court rejects Plaintiffs' as-applied challenge to the single-subject requirement.

        C.        **Pre-Election Challenge Procedure**

Plaintiffs assert that NRS 295.061 creates a private right of action to challenge the single-subject and description-of-effect requirements. They argue that by allowing political opponents to bring legal challenges to initiatives, NRS 295.061 unconstitutionally burdens speech and acts as a prior restraint. They also impute ill motives to the Legislature for enacting a statute that they claim burdens speech by tying up initiatives in court, thereby preventing their circulation. Plaintiffs misapprehend the meaning of the statute.

Contrary to Plaintiffs' assertion, NRS 295.061 does not create a private right of action. This is because private parties may bring nonsubstantive, pre-election challenges to initiative petitions without NRS 295.061. In *Herbst Gaming Inc. v. Heller*, the Nevada Supreme Court reiterated that Nevada courts—like the majority of jurisdictions—are authorized to hear pre-election challenges that allege that a petition violates procedural requirements or includes inappropriate subject matter. 141 P.3d 1224, 1228 (Nev. 2006). Thus for example, in the 2006 case of *Nevadans for Property Rights v. Heller*, Nevada courts properly heard a legal challenge based on NRS 295.009's single-subject requirement even though the single-subject requirement was not brought within the ambit of NRS 295.061 until a year later. 141 P.3d 1235, 1245 (Nev. 2006); 2007 Nev. Stat. 1251. Further, with this same authority, Nevada courts have heard pre-election challenges alleging an initiative seeks to legislate administrative details,[5] a petition filed with the

---

[5] *Nevadans for Prop. Rights*, 141 P.3d at 1248.

Secretary of State is materially different from the petition as circulated,[6] an initiative requires an expenditure of money without raising the necessary revenue,[7] an initiative petition is really a referendum,[8] and a circulator's affidavit is defective.[9] NRS 295.061 encompasses none of these pre-election challenges. Consequently, Plaintiffs' asserted interpretation—that NRS 295.061 creates a private right of action—is inconsistent with the widespread practice in Nevada courts of hearing pre-election challenges where no specific statute authorizes such challenges.

The Court's understanding of NRS 295.061 is most strongly vindicated by the Nevada Supreme Court's recent opinion in *Las Vegas Taxpayer Accountability Committee v. City Council of the City of Las Vegas*. *See* 208 P.3d 429 (Nev. 2009). In that case, the Nevada Supreme Court considered whether NRS 295.009 and 295.061 applied to municipal initiatives. The court held that NRS 295.009 applied, but NRS 295.061 did not. As a result of their holding, the plaintiffs in that case were permitted to challenge the defendant's proposed municipal initiative under NRS 295.009's single-subject and description-of-effect requirements after the fifteen-day deadline set by NRS 295.061 had lapsed and outside of the First Judicial District Court as required by NRS 295.061. If NRS 295.061 created a private right of action, as Plaintiffs contend, then the Nevada Supreme Court's holding would be self-contradictory because once the court found NRS 295.061 did not apply, there would have been no right to challenge the initiative pursuant to NRS 295.009. Thus NRS 295.061 does not create a private right of action, but instead is a "procedural mechanism for asserting challenges to a measure based on the single-subject requirement and the description of effect." *Id.* at 438.

---

[6] *Nevadans for Nevada*, 142 P.3d at 352.

[7] *Herbst Gaming, Inc.*, 141 P.3d at 1233.

[8] *Id.* at 1234.

[9] *Las Vegas Convention & Visitors Auth. v. Miller*, 191 P.3d 1138, 1151 (Nev. 2008).

Properly understood, NRS 295.061 does not burden Plaintiffs' First Amendment rights—it protects them. It is not, as Plaintiffs suggest, an underhanded attempt by the Legislature to thwart the initiative process by allowing political opponents to bring legal challenges to stall petition circulation. Rather, NRS 295.009 protects initiative proponents' speech rights by ensuring that any legal challenge based on the single-subject and description-of-effect requirements are brought—and resolved—early. NRS 295.061 also furthers this important interest by providing a safe haven, after a petition has been challenged. This safe haven prevents repeat challenges to a petition based on its description of effect if the petition is amended in compliance with a court order. Accordingly, NRS 295.061 is a permissible and constitutional election regulation.

### III. Conclusion

The Court is conscientious that Plaintiffs have invested significant time and resources to advocate for the passage of their proposed initiatives. The Court is also cognizant that Nevada's initiative and referendum regulations provide fertile ground for opponents to file pre-election legal challenges that can trip up the unprepared initiative proponent. But the Constitution does not require Nevada "to structure its initiative process in the most efficient, user-friendly way possible." *See Biddulph*, 89 F.3d at 1500–01. Further, in the Court's view, Plaintiffs would be wise in the future to avoid repeatedly withdrawing and refiling their petitions, thereby allowing their opponents to bring repeat legal challenges.

//
//
//
//
//
//
//
//

AO 72
(Rev. 8/82)

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Proposed Intervenors' Motion to Intervene (#89) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (#26) is DENIED, that Defendant's Countermotion for Partial Summary Judgment (##101) is GRANTED, and the Proposed Intervenor's Countermotion for Partial Summary Judgment (##91, 92) is DENIED as moot.

Dated: August 13, 2009.

_____
**ROGER L. HUNT**
**Chief United States District Judge**